UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shera Sandwell, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF SAN MARCOS, and DOES 1-25, inclusive,<br><br>Defendants. | Case No.:  3:25-cv-00220-CAB-DDL<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>**[Doc. No. 5.]** |

On January 30, 2025, Plaintiff Shera Sandwell brought a lawsuit pursuant to 42 U.S.C. § 1983 against Defendant City of San Marcos ("the City") and unknown City of San Marcos Defendants.  [Compl., Doc. No. 1.]  On March 13, 2025, the City of San Marcos filed a motion to dismiss for lack of ripeness and failure to state a claim.  [Doc. No. 5.]  On April 3, 2025, Sandwell filed an opposition.  [Doc. No. 6.]  On April 10, 2025, the City of San Marcos filed a reply.  [Doc. No. 7.]  The City of San Marcos concurrently filed an objection to Plaintiff's declaration.  [Doc. No. 8.]  Pursuant to Civ.LR. 7.1.d.1, the Court finds the motion suitable for determination on the papers.

The City makes four principal arguments: (1) a 2022 stipulated judgment against Plaintiff and for the City in San Diego County Superior Court bars the entire complaint based on the principles of res judicata and/or collateral estoppel; (2) by settling a prior

action and signing a stipulated judgment, Plaintiff waived the claims she now raises in her complaint; (3) Plaintiff's as-applied challenge to the City's zoning code is time-barred by the two-year statute of limitations for 42 U.S.C. § 1983 actions in California; and (4) Plaintiff's as-applied challenge is not ripe because the City has not reached a final decision on issuing her a permit.  [Doc. No. 5 at 2.]  The Court agrees with the City that the complaint is barred based on res judicata.  For this reason, the motion is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

## I.    BACKGROUND

The Court takes the alleged material facts as true and construes them in the light most favorable to Plaintiff. *Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007).  According to the complaint, Plaintiff's property has served as a gathering spot for local families to engage in gardening, animal care, art, writing, and other creative endeavors for decades.  [Compl. ¶ 13.]  On October 1, 2024, Plaintiff emailed the City, inquiring if she could continue these gatherings and promising not to host commercial events, such as weddings.  [Compl. ¶ 15.]  On October 2, 2024, the City communicated to Plaintiff that these activities constitute a "place of assembly" under the City's A-1 Agricultural zoning, and thus require a Conditional Use Permit ("CUP").  [*Id.*]  Plaintiff alleges this application process grants City officials wide discretion and does not have clear or narrowly tailored standards to guide officials in their decisions to grant or deny CUPs for farm-based gatherings.  [Compl. ¶ 17–18.]

Plaintiff asserts that the City enforced this permit requirement against her from 2017–2022, including by filing a lawsuit in state court on December 10, 2019.  [Compl. ¶ 19.]  The City's claims in this prior lawsuit were settled in June 2022, which Plaintiff alleges caused her property to shut down.  [*Id.*]  According to the complaint, Plaintiff never received a final decision from the City, despite expending tens of thousands of dollars to pursue a CUP.  [*Id.*]  Plaintiff alleges this expense, combined with the absence of any clear path to approval, prohibits Plaintiff from exercising her First Amendment right to host peaceful assemblies on her land.  [Compl. ¶ 20.]  Plaintiff further alleges that because her

1  farm gatherings are expressive, associational activities, the City's CUP requirement

2  amounts to a prior restraint on speech and assembly.  [Compl. ¶ 22.]

3  ## II.    LEGAL STANDARD

4  ### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

5  Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss based

6  on the court's lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  As it relates to

7  Fed. R. Civ. P. 12(b)(1), "subject-matter jurisdiction, because it involves a court's power

8  to hear a case, can never be forfeited or waived."  *United States v. Cotton*, 535 U.S. 625,

9  630 (2002).  This threshold requirement "'spring[s] from the nature and limits of the judicial

10  power of the United States' and is 'inflexible and without exception.'"  *Steel Co. v. Citizens*

11  *for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M. Ry. Co. v.*

12  *Swan*, 111 U.S. 379, 382 (1884).  As such, the Court can dismiss a case on subject matter-

13  jurisdiction grounds sua sponte.  *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

14  The plaintiff bears the initial burden of establishing the Court's jurisdiction.  *Scott v.*

15  *Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).  When considering a motion to dismiss

16  pursuant to Rule 12(b)(1), the Court may look beyond the complaint to any evidence (such

17  as affidavits and testimony) to resolve factual disputes concerning jurisdiction.  *McCarthy*

18  *v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  The Court need not presume the

19  truthfulness of the plaintiff's allegations when evaluating a motion under Rule 12(b)(1).

20  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Federal courts are courts of limited

21  jurisdiction, and lack of jurisdiction is presumed unless proven otherwise.  *See Stock W.,*

22  *Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989).  If

23  a complaint does not survive scrutiny under Rule 12(b)(1) and the party could not cure the

24  jurisdictional defect by amendment, the Court should dismiss the action without leave to

25  amend.  *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

26  ### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

27  Fed. R. Civ. P. 12(b)(6) permits a party to raise by motion the defense that the

28  complaint "fail[s] to state a claim upon which relief can be granted."  The Court evaluates

3:25-cv-00220-CAB-DDL

1  whether a complaint states a recognizable legal theory and sufficient facts in light of Fed.

2  R. Civ. P. 8(a)(2), which requires a "short and plain statement of the claim showing that

3  the pleader is entitled to relief."   Although Rule 8 "does not require 'detailed factual

4  allegations,' ... it [does] demand ... more than an unadorned, the-defendant-unlawfully-

5  harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

6  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

7       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

8  accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.*  (quoting

9  *Twombly*, 550 U.S. at 570); see also Fed. R. Civ. P. 12(b)(6).  The Court need not accept

10  as true "legal conclusions" contained in the complaint, *id.*, or other "allegations that are

11  merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-*

12  *Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

13  **III.   DISCUSSION**

14  **A. Defendant's Request for Judicial Notice**

15       As an initial matter, Defendant seeks judicial notice of: (1) Exhibit 1: the City's

16  complaint against Sandwell for violations of the San Marcos Municipal Code ("SMMC"),

17  filed December 10, 2019 in San Diego Superior Court; (2) Exhibit 2: the stipulated

18  judgment in San Diego Superior Court, entered June 27, 2022; and (3) Exhibit 3: an August

19  2022 letter from City Planning Division Director Joseph Farace to Sandwell titled "APNs:

20  182-101-13 and 182-101-14 – Determination of Allowed Uses."  [Doc. No. 5-2 at 2.]

21  Plaintiff does not oppose this request.  [*See* Doc. No. 6.]  For the reasons below, the Court

22  **GRANTS** Defendant's request for judicial notice.

23       Generally, review of a complaint under Rule 12(b)(6) is limited to the pleading, and

24  the court may not consider extra-pleading materials without converting the motion into a

25  motion for summary judgment.  *See* Fed. R. Civ. P. 12(b)(6); 12(d).  There are two

26  exceptions to this general rule: the court may consider materials that are judicially

27  noticeable under Federal Rule of Evidence 201, and the court may consider materials that

28

3:25-cv-00220-CAB-DDL

1   fall within the incorporation-by-reference doctrine. *Khoja v. Orexigen Therapeutics, Inc.*,
2   899 F.3d 988, 998 (9th Cir. 2018).

3       Federal Rule of Evidence 201 permits judicial notice of "a fact that is not subject to
4   reasonable dispute" because it is "generally known" or "can be accurately and readily
5   determined from sources whose accuracy cannot reasonably be questioned."  A court may
6   take notice of "undisputed matters of public record," but not of "disputed facts stated in
7   public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis
8   in original).

9       A court may take judicial notice of court filings. *See Reyn's Pasta Bella, LLC v.*
10  *Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (noting that courts may take judicial
11  notice of court filings and other matters of public record).  Accordingly, the Court takes
12  judicial notice of Exhibits 1 and 2 as records of the Superior Court of California.

13      A court may take judicial notice of official correspondence from a public agency.
14  *Hein v. Captain Grande Band of Diegueno Mission Indians*, 201 F.3d 1256, 1259 n.4 (9th
15  Cir. 2000).  A court may take judicial notice of the existence of matters of public record,
16  but not the truth of the facts cited therein. *See Lee v. City of Los Angeles*, 250 F.3d 668,
17  689-690 (9th Cir. 2001).  The Court thus takes judicial notice of Exhibit 3.

18  **B. Defendant's Objections to Plaintiff's Declaration**

19      In her opposition, Plaintiff submitted two exhibits: (1) a Declaration in Support of
20  Plaintiff's Opposition to Defendant's Motion to Dismiss and (2) a copy of the parties'
21  Settlement Agreement from the previous action.  Plaintiff does not request judicial notice
22  of the exhibits or argue that the exhibits are central to her claims.  For the reasons below,
23  the Court declines to take notice of either document.

24      Defendant objects to Plaintiff's declaration opposing the Rule 12(b)(6) motion.
25  [Doc. No. 8.] This declaration details alleged harms from the City's permitting process that
26  Plaintiff did not mention in her complaint.  Accordingly, the Court ignores it for the
27  purposes of the motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6); 12(d).

28

3:25-cv-00220-CAB-DDL

1    As to the copy of the party's Settlement Agreement, Defendant does not dispute the

2  authenticity of the document and generally does not oppose the Court's consideration of

3  the Settlement Agreement.  However, the Court declines to sua sponte admit the document

4  as judicially noticeable or incorporated-by-reference in the complaint.  As described below,

5  the Court finds the 2022 stipulated judgment to adequately establish res judicata, and the

6  Court declines to decide whether judicial notice of the Settlement Agreement is proper.

7    **C. Ripeness**

8    Going to the Court's jurisdiction, the City argues that Plaintiff's as-applied claims

9  are not ripe under the finality requirement laid out in *Williamson Cnty. Reg'l Planning*

10 *Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985), and reaffirmed in

11 *Pakdel v. City & Cnty. of San Francisco* (2021) 594 U.S. 474, 475 ("When a plaintiff

12 alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not

13 consider the claim before the government has reached a 'final' decision.").

14   The final decision ripeness requirement does not apply to all land use claims.  The

15 Ninth Circuit has explained that *Williamson's* finality prong applies to substantive due

16 process, equal protection, and other constitutional claims that relate to or arise from a

17 regulatory takings claim.  *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920

18 F.2d 1496, 1507 (9th Cir. 1990) ("In evaluating the ripeness of due process or equal

19 protection claims arising out of the application of land use regulations, we employ the same

20 final decision requirement [from *Williamson*] that applies to regulatory taking claims."); *S.*

21 *Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 507 (9th Cir. 1990) ("All as-applied

22 challenges to regulatory takings, whether based on the just compensation clause, the due

23 process clause[,] or the equal protection clause possess the same ripeness requirement: a

24 final determination by the relevant governmental body.")  The Ninth Circuit has since

25 extended the finality requirement from takings claims to Religious Land Use and

26 Institutionalized Persons Act (RLUIPA) claims.  *Guatay Christian Fellowship v. Cnty. of*

27 *San Diego*, 670 F.3d 957, 980 (9th Cir. 2011); *see Williamson Cnty. Reg'l Plan. Comm'n*

28 *v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985).

3:25-cv-00220-CAB-DDL

The Ninth Circuit, however, has not decided whether the final decision requirement from *Williamson* should directly apply to First Amendment claims in the land use context. *Guatay*, 670 F.3d. at 987. The cases Defendant relies on only applied the finality requirement to First Amendment claims that arose out of, or related to, "as-applied" takings claims and/or RLUIPA claims. Plaintiff's First Amendment claims do not relate to, or arise from, any takings claim nor RLUIPA claim. Further, the Ninth Circuit has held that claims pertaining to a local government's permitting process are distinct from "as-applied" takings claims and, therefore, are not subject to the finality requirement. *Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003). ("Rather, [constitutional challenges] are separate claims supported by allegations of discrete constitutional violations.") Hence, this court finds the standard ripeness doctrine is appropriate.

The standard ripeness doctrine has both constitutional and prudential components. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). The constitutional component overlaps with the analysis of "injury in fact" for Article III standing and considers whether "the issues presented are 'definite and concrete, not hypothetical or abstract.'" *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (quoting *Thomas*, 220 F.3d at 1138–39); *see also Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017). The prudential ripeness inquiry is "guided by two overarching considerations: the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Bishop Paiute Tribe*, 863 F.3d at 1154 (internal quotation marks omitted) (quoting *Thomas*, 220 F.3d at 1141).

The Court finds that Plaintiff's claim satisfies constitutional ripeness concerns.[1] Where a plaintiff seeks to challenge a statute prior to enforcement, "there must be 'a

---

[1] The City of San Marcos does not contest prudential ripeness. Nevertheless, the Court is convinced Sandwell's claim is prudentially ripe. Sandwell's claims are fit for judicial decision because they are "primarily legal and do[ ] not require substantial further factual development." *Wolfson*, 616 F.3d at 1060.

3:25-cv-00220-CAB-DDL

1   genuine threat of imminent prosecution.'" *Clark v. City of Seattle*, 899 F.3d 802, 813 (9th

2   Cir. 2018) (quoting *Bishop Paiute Tribe*, 863 F.3d at 1154).  To determine whether a

3   plaintiff has established such a threat, the Ninth Circuit considers: "(1) whether the

4   plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the

5   prosecuting authorities have communicated a specific warning or threat to initiate

6   proceedings, and (3) the history of past prosecution or enforcement under the challenged

7   statute." *Id.* (quoting *Bishop Paiute Tribe*, 863 F.3d at 1154).  In addition, the Ninth Circuit

8   "appl(ies) the requirements of ripeness and standing less stringently in the context of First

9   Amendment claims." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173-74 (9th Cir. 2022).

10              **i.       Concrete Plan**

11          "A concrete plan need not be 'cast in stone' but must be 'more than a hypothetical

12   intent to violate the law.'"  *Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022) (citation

13   omitted).  In considering the concrete plan factor, courts have relaxed the details required

14   for stating a concrete plan where a plaintiff has previously violated the law in question.

15   See *Tingley v. Ferguson*, 47 F.4th 1055, 1068 (9th Cir. 2022) ("[W]e do not require

16   plaintiffs to specify, 'when, to whom, where, or under what circumstances' they plan to

17   violate the law when they have already violated the law in the past.").  Plaintiff alleges that

18   her intended future conduct—hosting family gatherings on her property—has been a long-

19   standing feature of the community.  [Compl. ¶ 13.]  Without first acquiring a CUP, these

20   specific past instances previously violated the City's zoning ordinance.  Furthermore, like

21   other cases in which the Ninth Circuit has relaxed the concrete plan factor, the pleadings

22   sufficiently indicate that Plaintiff seeks to host family gatherings on her property in the

23   future.  *See Porter v. Martinez*, 68 F.4th 429, 437 (9th Cir. 2023) (finding that plaintiff

24   stating she wanted to specifically engage in the prohibited activity in the future but would

25

26   _____

27   Withholding review would impose a hardship because Sandwell alleges she has engaged in "the
     constitutionally-recognized injury of self-censorship" by foregoing her ability to host gatherings at her
28   property while the zoning ordinances remain in effect.  *Id.*

1    not out of fear of enforcement contributed to finding that concrete plan existed); *Tingley*,

2    47 F.4th at 1067 (finding a concrete plan where there were specific allegations of past work

3    and expectations for future work that would violate the challenged law).  For this reason,

4    this first prong is satisfied.

5         **ii.**     **Specific Warning or Threat**

6         A promise to enforce a law that is challenged as unconstitutional "amounts to a

7    credible threat of enforcement."  *Isaacson v. Mayes*, 84 F.4th 1089, 1101 (9th Cir. 2023)

8    (citing *Tingley*, 47 F.4th at 1068).  In the First Amendment context, "a plaintiff 'need only

9    demonstrate that a threat of potential enforcement will cause him to self-censor.'"  *Tingley*,

10   47 F.4th at 1068 (quoting *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th

11   Cir. 2014)).

12        Plaintiff asserts that the threat of potential enforcement has caused her to self-censor

13   by not hosting any families on her property as social visitors.  [Doc. No. 6. at 10.]  Further,

14   the fact that the City has not disavowed enforcement of the zoning ordinances is evidence

15   of an intent to enforce it.  *California Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir.

16   2021).   In response to an inquiry from Plaintiff, the City's email response stated that

17   Plaintiff's intended future conduct constitutes a "place of assembly" under the A-1

18   Agricultural zoning, triggering the requirement of a Conditional Use Permit ("CUP").

19   [Doc. No. 1-2 at 1.]  In *California Trucking*, the Ninth Circuit recognized a sufficient intent

20   to enforce a law where a state had "sent letters to businesses notifying them" of its

21   interpretation of a new requirement under state law.  *California Trucking*, 996 F.3d at 653.

22   Like the letters in *California Trucking*, the Court views the City's email to show an intent

23   to enforce the zoning ordinances.  On these grounds, the second test is satisfied.

24        **iii.**     **History of Past Prosecution or Enforcement**

25        Finally, the Court considers the history of enforcement of the City's zoning

26   ordinances.  *Thomas*, 220 F.3d at 1140.  Under this third prong, "the government's active

27   enforcement of a statute [may] render[ ] the plaintiff's fear [of injury] . . . reasonable."  *Id.*

28   Plaintiff alleges that from 2017–2022, the city engaged in extensive administrative

1    enforcement of the same permitting requirements against her, including filing a lawsuit in

2    2019.  [Compl. ¶ 19.]  This history of past enforcement demonstrates that Plaintiff's fear of

3    prosecution is reasonable.

4        Under the standard ripeness doctrine, this lawsuit is ripe for consideration.

5    **D. Claim Preclusion**

6        The City of San Marcos further argues Plaintiff's complaint must be dismissed under

7    the doctrine of claim preclusion.  For the following reasons, the Court agrees.

8        In determining the preclusive effect of a state court judgment, federal courts follow

9    the state's rules of preclusion.  *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012)

10   (citing *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482 (1982)).  In California, claim

11   preclusion "arises if a second suit involves: (1) the same cause of action (2) between the

12   same parties (3) after a final judgment on the merits in the first suit." *DKN Holdings LLC*

13   *v. Faerber*, 61 Cal. 4th 813, 824 (2015).

14       Here, the first two elements are clearly met.  The City and Plaintiff were both parties

15   to the prior lawsuit (the "California Action") [Compl. ¶ 19; Request for Judicial Notice

16   ("RJN"), Exhs. 1, 2.]  Similarly, the stipulated judgment entered in June of 2022 was a final

17   judgment on the merits.  *See Consumer Advoc. Grp., Inc. v. ExxonMobil Corp.*, 168 Cal.

18   App. 4th 675, 694 (Cal. Ct. App. 2008) (a court-approved settlement acts as a final

19   judgment on the merits for the purposes of res judicata.)  Therefore, the only remaining

20   issue for purposes of claim preclusion is whether the current proceeding involves the "same

21   cause of action" as the prior suit.

22       **i.    Same Cause of Action**

23       To determine whether two proceedings involve identical causes of action for

24   purposes of claim preclusion, California courts have consistently applied the 'primary

25   rights' theory."  *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 813 (2010) (internal

26   citations omitted).  The "determinative factor" in the primary rights analysis is the "harm

27   suffered." *Id.*  Thus, "if two actions involve the same injury to the plaintiff and the same

28   wrong by the defendant then the same primary right is at stake even if in the second suit

the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." *San Diego Police Officers' Ass'n v. San Diego City Employees' Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009) (quoting *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174 (1983)).  And if the same primary right is involved, a prior judgment bars not only "all matters actually raised in the first suit but also all matters which could have been raised." *Eichman*, 147 Cal. App. 3d at 1175.

An issue is one that could have been raised in the prior proceeding "'if the matter was within the scope of the action, related to the subject matter and relevant to the issues.'" *Amin v. Khazinder*, 112 Cal. App. 4th 582, 589–90 (2003) (quoting *Tensor Grp. v. City of Glendale*, 14 Cal. App. 4th 154, 160 (1993)).  "'[E]ven though the causes of action [may] be different, the prior determination of any issue is conclusive in a subsequent suit between the same parties as to that issue and every matter which might have been urged to sustain or defeat its determination.'" *Id.*  (internal quotation omitted).

Plaintiff contends the primary harm suffered in the two actions differs.  [*See* Doc. No. 6. at 3-4.]  Plaintiff argues the primary harm in the California Action was that she violated the municipal code by hosting wedding events.  [Doc. No. 6. at 4.]  By contrast, Plaintiff argues the primary harm at issue now is that the City's prior restraint chills her First Amendment rights for nonprofit and educational gatherings.  [*Id.*]

The Court disagrees on two grounds.  First, the Court finds the same injury to be present against Plaintiff in both actions: the chilling of Plaintiff's claimed right to peaceable assembly.  In the prior action, the City enforced its CUP requirement to operate a place of assembly as defined by SMMC, Title 20 § 20.600.180.  This definition is not limited to hosting commercial wedding venues but encompasses any "[g]athering places for public, private, commercial or nonprofit gatherings with permanent or moveable seating." [Compl. ¶¶ 15, 16; SMMC § 20.600.180.]  Plaintiff's right to host farm-based gatherings for local families is plainly encompassed by this definition, just as the right to host commercial weddings was in the prior action.

1    Second, the Court finds the alleged wrong by the Defendant—enactment of the

2  permitting scheme—to be consistent between the actions as well.  The California Action

3  was a lawsuit to enforce the same permit requirements that are currently at issue before the

4  court.  [RJN Exh. 1, ¶¶ 51–75.]  Although Plaintiff contends the focus of the California

5  Action encompassed a distinctly separate issue, [*see* Doc. No. 6. at 4], Plaintiff could have

6  brought the constitutional challenge to the City's permit requirement that is the subject of

7  this lawsuit during the California Action, but she failed to do so then.  *See Villacres v. ABM*

8  *Indus. Inc.*, 189 Cal. App. 4th 562, 576 (Cal. Ct. App. 2010) ("If the matter was within the

9  scope of the action, related to the subject matter and relevant to the issues, so that it could

10  have been raised, the judgment is conclusive on it." (internal quotation omitted)).

11  Therefore, the Court finds the 2022 stipulated judgment precludes further litigation of

12  Plaintiff's contentions.

13      **IV.    CONCLUSION**

14      Because Plaintiff could have asserted the constitutional challenge to the City's

15  zoning ordinance in her prior lawsuit with the City, and because that prior lawsuit has

16  reached final judgment, this suit is barred by the doctrine of claim preclusion.  It is hereby

17  **ORDERED** that Defendant's motion to dismiss, [Doc. No. 5], is **GRANTED**.  Because

18  Plaintiff could not cure the jurisdictional defect by amendment, the case is **DISMISSED**

19  **WITH PREJUDICE**.

20      It is **SO ORDERED**.

21    Dated:  July 28, 2025

22

23                            _____
                              Hon. Cathy Ann Bencivengo
                              United States District Judge

24

25

26

27

28

3:25-cv-00220-CAB-DDL